Good morning. May it please the Court, my name is Soren Rotman, and I represent the petitioner Francisco Garfias-Rodriguez. Mr. Garfias is asking this Court to uphold its precedence on two issues, his eligibility for adjustment of status under 8 U.S.C. 1255i, and his ability to obtain a stay of the voluntary departure period from this Court. To begin with, in Acosta v. Gonzalez, this Court resolved at Chevron Step 1 that Section 1255i permits an individual to seek adjustment of status, despite being inadmissible under Section 1182.89c.i.1. While the Court in Acosta did look to its earlier decision in Perez-Gonzalez, a decision that has now been overruled, that was by no means its only source of support. The Court looked also at many other provisions and general rules of statutory construction, providing under OCTAR, for example, that an ameliorative rule designed to forestall harsh results needs to be interpreted and applied in an ameliorative fashion. The Court explicitly stated that this rule applies with additional force in the immigration context, where doubts are to be resolved in the favor of the non-citizen. Applying this rule, the Court found that it was not clear that Congress intended the harsh result that would otherwise obtain. Thirdly, the Acosta decision found further support in the Tenth Circuit's decision in Padilla-Caldera, which also remains good law. That decision provided an in-depth analysis of the structure, context, and history of the statutes it issued, and held that Congress intended adjustment of status under 1255i to provide an exception to the general rule that a person who enters without inspection is ineligible for adjustment of status. Now, the Attorney General contends that this Court should now defer to the Board's interpretation because it's reasonable and has been granted deference by other circuits. However, should this Court proceed to Step 2 of Chevron, it should still find that the Board's interpretation is not permissible. First of all, the Board's decision in matter briones conflates two statutory provisions that are distinct, Section 1182A9C I1 and I2, which should be treated differently for purposes of applying 1255i. The Tenth Circuit in Padilla and this Court in Acosta explicitly noted that the legislative history reveals the different intentions that Congress had for these two different groups of people. It says, the authors of the Life Act did not think an exemption was even necessary for this group or this part of a class of aliens, those deemed inadmissible under CI1, presumably because Section 1255i was intended to apply to all of them who are deemed inadmissible under that section. Even the Board in matter briones describes how in 1994, when the Life Act was first enacted, individuals who had reentered the country without inspection were still not deemed inadmissible or excludable. It was only those that had previously been deported who were accorded a different sort of treatment. So at the time that this statute was authored, the concern rested mainly with people who had already been deported and reentered and not with those who had simply traveled across the border without inspection. If the Court looks at the title of the statute, 1182A9, it is, quote, aliens previously removed. Furthermore, the BIA's interpretation is contrary to the fundamental purpose that motivated the discretionary relief that Congress made available in Section 1255i. Accordingly, this Court should reject those constructions that are contrary to the clear congressional intent or that frustrate the policy that Congress here sought to implement. The Board's interpretation of briones is unreasonable. Under ACTAR, as I mentioned, the ameliorative rule is designed to forestall harsh results, and briones itself, by conflating and deeming these two separate provisions a unitary ground, really is not accurately providing a portrayal of the intent of the legislation. Okay. Do you want to address the second issue? I would like to point out that if the Court should decide and agree with the government and proceed to Chevron Step 2, and if the Court should decide beyond that to agree and to defer now to the Board of Immigration Appeals, it should do so prospectively only. Mr. Garfias, as well as many others, paid thousands of dollars in application costs and legal fees, and now the BIA is reversing the rules without any advance notice. Earlier this year, on January 27th, the BIA published a matter of dies in lopos, in which it explicitly parts ways with this Court, and says that it will no longer abide by this Court's holding in Acosta de Gonzalez. So, when Mr. Garfias applied many years ago, in 2002, he was relying on the fact that he was eligible, prima facie eligible, under Section 1255I. And hence, when this Court, and in the record contains even a BIA remand, an earlier remand, that specifically points to this Court's decision in Acosta de Gonzalez. And on remand, the immigration judge once again denied the relief. However, Mr. Garfias had the expectation, and indeed, along with many others, that he should have and could have been granted adjustment of status under 1255I. So, if this Court should agree with the government, it should still only be a prospective rule, because Mr. Garfias has been relying and has a burden that the government cannot overcome. This Court should analyze the factors of Montgomery Ward, in order to determine the retrospective application, and should find in Mr. Garfias' favor. As to the second issue in the case of voluntary departure, the Attorney General fails to articulate how, by implementing this regulation, he can thwart this Court's statutory and equitable authority to issue stays. Voluntary departure is a form of relief from removal. An alien has to qualify by meeting certain statutory guidelines. The Attorney General can issue regulations. However, the language is to limit eligibility. And when Mr. Garfias filed his petition for review, he did so on the understanding that, should his primary relief be denied, he would still retain the rights of voluntary departure. Now, the Supreme Court in Dada seemed to foreshadow its view of the regulation. The Supreme Court explicitly declined to address the issue of whether the Courts of Appeals have the authority to issue stays. I understand it was sort of the issue, but in terms of the regulation itself? The part of the regulation that the Court looked to in Dada had to do with motions to reopen. And that is specifically geared toward motions to the agency. What Mr. Garfias is contending is that there are clear commands that are needed to strip a court of jurisdiction under Miller v. French. And here, the Attorney General, by this regulation, is attempting to punish individuals for filing a judicial challenge to the removal order. I would like to reserve the balance of my time. Okay. May it please the Court. I'm going to start with the voluntary departure issue. You need to reintroduce yourself. I'm sorry, Your Honor. Luis Perez, again on behalf of the Attorney General of the United States. I'm going to start addressing the voluntary departure issues. This is why I think this case was called for. The voluntary departure. We didn't grant cert in this case. I'm sorry. We take up all issues that are on the appeal, so don't assume. Point well taken, Your Honor. Thank you. The voluntary departure regulation is a reasonable exercise of the Attorney General's authority. Under Section 80 U.S.C. 1229 C.E., which explicitly authorizes the Attorney General the authority to promulgate regulations to limit eligibility for voluntary departure. And along those lines, the regulation at hand pretty much guarantees the quid pro quo that the Supreme Court decision in GATTA spoke about. Because although voluntary departure is terminated upon the filing of the petition for review, the alien can still benefit from the privilege of voluntary departure if he does what he promised to do, which is to leave the United States within 30 days. Now, that goes to the eligibility requirement for voluntary departure under Section 1229 C.B.1.D., which says that the alien will establish by clear and convincing evidence that he intends to leave the United States. The Supreme Court decision in GATTA added a qualifier to that promptly. On page 2319 of the Supreme Court decision in GATTA. And why the Supreme Court said promptly? The Supreme Court was talking about, or was referring to, Section 1229 C.B.2, which places a statutory limit on the Attorney General's authority to grant voluntary departure, which cannot exceed 60 days. Now, counsel's main argument is that by essentially promulgating this regulation, the Attorney General is improperly preventing this Court from exercising its equitable authority. However, I will point the Court to page 2319 again from the GATTA decision, where the Supreme Court is citing its decision in United States v. Brockamp, 519 U.S. 347 at page 352. And in brackets, the Supreme Court describes that decision that substantive limitations are not subject to equitable toll. So here, there is an inescapable inference that by legislating the statutory limit, Congress need not intend for a de facto extension of that limit. The other thing that I wanted to point to is that, and I'm going back to the whole issue of ACOSTA. In ACOSTA, this Court recognized the ambiguity between the recidivist inadmissibility provision and adjustment of status under 245I. And I'm citing to page 553 of the ACOSTA decision, where the Court said, the statutes involved do not clearly indicate which should take precedence. Now, with respect to the reliance on Padilla-Caldera that ACOSTA rely on, please bear in mind that Padilla-Caldera precedes Briones. And that recently, in Herrera-Castillo, which is cited in our brief, the Tenth Circuit recognized that it would be of limited presidential value in light of matter of Briones. So the Tenth Circuit has questioned its own authority in Padilla-Caldera. The other thing is that there was a case at the time Padilla-Caldera was out there, the Fifth Circuit in Mortera, had addressed the issue of the recidivist inadmissibility provision and had pretty much agreed with the government. However, in ACOSTA, this Court declined to consider Mortera because it fell down by Perez-González. And let me just get you the footnote. That is in, I don't have the specific page. Oh, here it is, Your Honor. Page 555, note 6 of the ACOSTA decision. So because Perez-González has been overturned by Durán-González, we are arguing that Durán-González effectively superseded ACOSTA. However, if the Court disagrees with that, we argue in the alternative that ACOSTA does not foreclose matter of Briones. And why is that? Essentially for the same reasons, Your Honor. ACOSTA relied on Perez-González and the construction, and again, finding itself bound by Perez-González, it didn't consider the Mortera decision. It relied on Padilla-Caldera just to the extent to find supplemental authority to the whole Perez-González decision. But it doesn't consider the interplay between the recidivist inadmissibility provision and the adjustment of status provision. And that was done. The Court hasn't done that yet. Matter of Briones does that in the first instance. And in Mercado Sasueta, this Court found that Perez-González allowed for an interpretation by the Board as to this issue, you know, how the recidivist inadmissibility provision affects 245I because there has been no court interpretation as to along those lines. Matter of Briones is a proper exercise of the Board's authority. With respect to the issue as to whether or not matter of Briones is a reasonable interpretation of the statute, we would argue that it is. Because as matter of Briones points out, the 1996 recidivist provision, inadmissibility provision, came after adjustment of status, 245I adjustment of status in 1994. So if anything, it pretty much qualifies the benefit of adjustment of status. One of the things that the Court considered in Briones, the Board considered in Briones, was that at the time 245I was enacted, being present in the United States without inspection was not a ground of inadmissibility. It was a ground of deportability. And as a matter of fact, people that were recidivists, at least in the context of people who had deportation orders and reentered, were inadmissible and would not have been eligible for adjustment of status under 245I. Now, what the statute does in 1996 is that it adds an additional category of recidivists. Those that do not have a final order of removal, have been present in the country for one year, leave the country and then reenter. Now, this Court in Acosta declined to consider both categories as distinguishable. In page 554 of Acosta, this Court held, despite the lack of evidence that Congress intended, different treatment for two groups of aliens that is specifically grouped together. So this Court in Acosta pretty much said that Congress intended to treat both groups similarly. Now, what 212 or 1182A9C is trying to pretty much establish is that if you're a recidivist alien, you will not be admissible to the United States. This has nothing to do really with respect to people who are present without inspection. If you are ‑‑ if you're ‑‑ I think we have the point. Yes, sorry. I think you're great, too. We're familiar with that. Thank you. With respect to the retroactivity analysis, I would like to point out ‑‑ Be quick, because you're about out of time. Sorry, Your Honor. I would refer them to the briefs unless the Court has any questions about that issue. I don't think so. Thank you, Your Honors. Sorry, Norman, again, for the petitioner. The term recidivist carries an extremely negative connotation in law. A habitual criminal, a criminal repeater, that's the black dictionary definition. For the Board to categorize Mr. Garfias as a criminal repeater for making a visit to his ailing mother and then to attend her funeral is untenable in light of the ameliorative purposes of Section 1255I. So if the Board's analysis holds, then it has drawn an arbitrary line that forces a Sophie's choice upon individuals like Mr. Garfias, either attend to a dying relative abroad, with the consequence that he'll be banished from the country for ten years at least and unable to remain with his U.S. citizen spouse and children, or completely ignore a major human event, such as the death of a parent, and remain in a lawful status in the hope of someday adjusting in the United States. Surely Congress could not have intended to entrap individuals into making such decisions. As to voluntary departure, the Attorney General fails to address how the regulation is able to overcome years of precedent decisions in this Court, holding that it has equitable jurisdiction to grant a stay of that period in cases where a stay of removal is also warranted. The Voluntary Departure Statute sets forth the criteria by which individuals may be granted or denied in the first instance. It says nothing about the ability of the Attorney General to terminate that period upon a filing of petition for review, effectively punishing the noncitizen. In enacting this regulation, which also has retroactivity concerns in this case, because when Mr. Garfias applied for voluntary departure, it was prior to the issuance of this regulation. It was only after the Board's issuance of the decision that he was put on notice that now, if he filed the petition to challenge his removal order, he would face the loss of his voluntary departure. So there are also retroactivity concerns on that issue. All right. We've got it, and you're over time. Thank you, Your Honor. Thank you. We have read the briefs, and we do understand the arguments. Thank you, counsel, for the arguments this morning. We're going to stand in brief recess for about ten minutes, and then we'll pick up the last two cases on the calendar.
judges: Shea, Fisher, Bybee